## COALE, Executor of BRINTON, *v.* SMITH.

Testator bequeathed to his daughter E., wife of defendant, "exclusive of what he advanced to her and her husband, shortly after their marriage, in money, furniture, &c., and of the money her husband had since received from him, and part of it never refunded, $3325, payable in one year from his decease." He made a provision for another daughter, exclusive of a similar advance, and of moneys paid her husband on his transferring worthless bonds to testator. Testator had made advances to E., and loaned money to her husband, who had assigned for creditors, compromised at seventy-five cents in the dollar, and given testator a bond for this proportion of his debt; he had also paid the other creditors the remaining twenty-five per cent., and partially paid testator for that amount. Subsequently to the date of the will, another loan was made to the husband, and the whole amount of this indebtedness was included in a bond given to testator, who afterwards made a codicil, altering the provisions made in his will for other legatees. *Held,* the estate being solvent, the bond and interest due thereon were discharged by the will, which spoke from the date of the codicil.

Legacy to A., exclusive of money already received, means over and above that amount.

Parol testimony having been given to show the consideration of a bond, and that it was for debts mentioned in a will, evidence of declarations of testator is not admissible to show they were not intended to be included in the clause of release.

Will discharging all debts is a release of a new debt incurred between the date of the will and last codicil, though there be no reference therein to such debts, and no express words of republication.

*Jan.* 4, 5. THIS was an action on a bond of defendant to William Brinton, the plaintiff's testator.

The defendant set up a discharge by virtue of the will of the testator, his father-in-law, and gave it in evidence under an objection by plaintiff. By this, in August, 1837, testator, after a small legacy to his wife, and very particular directions as to his household furniture and a few books, and stating an understanding with his wife's father as to a provision for his only son, and that therefore he had given his estate principally to his daughters, devised as follows:

"*Item.* I give and bequeath to my daughter Elizabeth, wife of James Smith, (the defendant,) *exclusive of what I advanced to her and her husband shortly after their marriage in money, furniture,* &c., and of the money her husband has since received from me, and part of it never refunded, three thousand three hundred and twenty-five dollars, to be paid to her in one year after my decease.

"*Item.* I give and bequeath to my daughter Hannah, wife of Thornton Walton, exclusive of eight hundred and sixty-eight dollars I advanced to her and her husband about the time of their marriage, two thousand two hundred and thirty-two dollars, to be paid to her in one year after my decease. It is intended the above-named sum of $2232 shall also be exclusive of all the money I paid her husband, when he transferred to me three judgment-bonds on Robert Knox. These bonds are all yet in my hands, they being desperate when assigned, which is evident by there being a deficiency to satisfy the last lien on the lands of Knox, prior to the first of these. At the time I took these bonds, I had several reasons for doing it, which prudence forbade disclosing, and the method taken to prevent my other children sustaining too much loss thereby, I soon found occasion to explain to some of them. I have ever since believed I did right."

He then gave to his daughter Lydia, wife of William Coale, a tract of land, which she and her husband had conveyed to him, and continued:

"I also give and bequeath to my said daughter Lydia two thousand six hundred and fifty dollars, exclusive of what I have already advanced to her shortly after her marriage, to be paid to her in one year after my decease."

Then, after stating that his daughter Maria had received a reasonable portion, and was well provided for, he gave $5000 in trust for her children. To his son he devised a farm, subject to the payment

of $700 to his executors. To his daughter Susan Brinton $4600 and some furniture, and directed a sale of his house, &c., to pay the legacies.

The clause bequeathing a legacy to defendant's wife, as republished by the codicils, was the one relied on by defendant, and the other parts of the will here extracted were used in illustration of the intention.

In September, 1837, testator made a codicil directed to be attached to his will, by which he appointed his son as an additional executor, but made no other provision.

In October, 1841, by a codicil, he directed the provision for the children of his daughter (Maria) should go to their mother surviving them, instead of to his five daughters, as directed in the original will in the event of their death; and also reduced the legacy to Susan $200, and added some furniture, referring to and reciting the original provisions which were thus changed.

The special verdict found in addition to the will above stated, that defendant was married in 1811 to Elizabeth, the testator's daughter named in his will, and was advanced to the extent of $300 in money and furniture, and that he afterwards received from testator certain moneys for which he gave bonds, one in 1812, at four per cent. for £1000. In the same year, one at five per cent.—$1050. In 1813, one at six per cent.—$720. In 1821, one for $3344, at six per cent. On these, interest and a portion of the principal had been paid. That defendant assigned for the benefit of creditors in 1825, and having compounded at seventy-five cents in the dollar, took a reconveyance. On the 9th May, 1827, the last-mentioned bond was the only one held by testator; the debt was reduced, and a bond dated April 1, 1827, for $2000 taken, being seventy-five per cent. of the whole debt then due. That defendant subsequently paid most of his creditors in full for the twenty-five per cent. released under the composition deed, and partially paid testator. In 1839, he gave testator a single bill for $660 33, at five per cent., which, with the $2000 bond and interest, went to make up the bond now in suit, which was dated April 1, 1840.

| | |
|---|---|
| That the inventory showed credits, | $18,542 56 |
| Including the bonds received from the defendant and the other sons-in-law, amounting to $6,638 | |
| Legacies in money, | 17,607 00 |

The proceeds of the house directed to be sold were not included.

The plaintiff objected to evidence showing how the bond in suit was made up.

To rebut the evidence of defendant, plaintiff offered to show the

borrowing of the sums above mentioned by defendant, and the composition with creditors; and " also proposed to give in evidence the declarations of testator and defendant, that the intent of William Brinton the testator was, that the twenty-five per cent. thus released by William Brinton was to be taken off the portion of Elizabeth Smith, the defendant's wife; that William Brinton, when he gave instructions for drawing his will, directed the twenty-five per cent. to be deducted from the portion he would otherwise have given his daughter, the defendant's wife; that when he deposited his will, after its execution, with a friend for safe keeping, he stated that by the expression *' money her husband has since received, and part of it never refunded,'* he referred to and meant the twenty-five per cent. released to defendant; that the testator's object in noticing this in his will, was to discharge James Smith, the defendant, as a member of the Society of Friends, from the twenty-five per cent. against any claim which the executors might make against him under the discipline of that society; and that James Smith paid his other creditors the amount of the twenty-five per cent. released by them respectively, but had paid only part of that released by William Brinton."

So far as this related to declarations of testator, the court excluded the testimony.

On the whole case, the court (BELL, P. J.) gave judgment for the defendant, for the following reasons.

"The first and principal question presented by this special verdict is, whether an implication of gift or release of any money received by the defendant, since his marriage, from the plaintiff's testator, can be raised upon the words of the last will of the latter?

"It is said, that such an implication must be a necessary one, and some confusion of ideas would seem to prevail, as to what is meant by this phrase. It is, therefore, important in the outset to ascertain its import with as much precision as the subject admits of. The term 'necessary implication,' is thus defined by Lord Eldon in Wilkinson *v.* Adam, 1 Ves. & Bea. 456 : 'It does not mean natural necessity, but so strong a probability of intention, that an intention contrary to it, which is imputed to a testator, cannot be presumed.' Again, the learned Vice-Chancellor, in Michell *v.* Michell, 5 Mad. 69, says: 'The expression' " a necessary implication," is frequently applied to cases between a devisee and heir-at-law, and yet there is hardly a case decided against an heir-at-law, where the implication upon which it was so decided was of absolute necessity. It is but a *loose* way of defining this expression, to say that the intention must be so probable that the judge cannot suppose to the contrary;

and it seems strange to lay down a rule, that express words. snall not be required, but yet that there must be expressions tantamount to express words. I take it, that this is what will be found to be the *result* of all the cases; that the judge is, in *every* instance, to look at the whole of the will together, and then ask himself whether he is convinced' as to what was the testator's intention. An attentive examination of the cases with which the books are filled on the subject, will show these observations to be well founded, and that the question of implication or no implication, like most others arising upon wills, is one of simple construction, to be determined from the whole face of the will. It is true, the intention must be so clear, or as it is sometimes said indubitable, that a contrary intent cannot reasonably be supposed; but, still, as was said in Horton *v.* Horton, Cro. Jac. 74, a strong, probable implication is sufficient. Upon this point, Mr. Powell, in his Treatise on Devises, observes, 2 Pow. 211, it seems to have been the tendency of some modern cases, rather to extend than narrow the principle of raising by implication. Except where a train of decisions has settled the meaning of particular expressions, or determined the construction of peculiar forms of disposition, each case must be decided upon the provisions of the will giving rise to the question, taken as a whole, always however with reference to the general rule that has been adverted to.

" In the present case, the doubt springs from the meaning of the word ' exclusive,' as used in that clause of the testator's will which gives a legacy to his daughter Elizabeth, wife of the defendant. If as here employed, it can be construed in the same sense as ' besides,' ' in addition to,' or ' over and above,' there is manifested such a strong probable intent as will raise the implication, either of gift-or release of ' the money her husband has since received from me, and part of it never refunded.' If it be necessary to invoke authority to establish the correctness of this conclusion, it may be found in the case from Godolphin, cited in Bac. Abr. tit. *Leg.* B., where the bequest was of £100, *besides* the cloak, &c., which was held to carry the cloak, &c.; and in Crosbie *v.* Murray, 1 Ves. jun., 555, where the will gave a legacy of £4000, over and above the annuity of £150, which I have secured to him for life,' which words ' over and above' were decided to pass the annuity by *implication.* This is a very strong case in favour of this operation of these and similar expressions, inasmuc has here there was a mis-recital of the fact of the annuity having been secured for life; notwithstanding which, the decision is made to proceed upon the evident intention of the testator, that the legatee should take the annuity in addition to the £4000.

In endeavouring to ascertain the meaning to be assigned to the word 'exclusive,' the first consideration which presents itself is, that this will was drafted *inops concilii*, and though by a man of evident general intelligence, yet lacking in grammatical knowledge. The second is, that this word is applied in different parts of the will to different subjects matter, but that it is everywhere used in the same sense. Now, as we are bound to look to the whole will in construing any particular portion of it, if we find the word in question evidently used in the sense I have supposed may be assigned it in other clauses, we must necessarily give it a corresponding meaning in the clause more immediately under consideration, unless there be something in that clause, or in the general context of the will in connection with it, repugnant to such meaning. Passing over then, for the present, this part of the will, we come to the bequest of $2232 to the testator's daughter Hannah, wife of Thomas Walton, '*exclusive*' of $850 I advanced to her husband about the time of her marriage; and also 'exclusive of all the money I paid her husband when he transferred to me the judgment bonds on Robert Knox,' the same being stated as worthless at the time of transfer. It seems to me plain beyond cavil, from the use of these words, the testator contemplated the payment of $2232 to his daughter Hannah and her husband, in addition to, or over and above, not only the advancement made to Hannah, but of money given to the husband on the security of the bonds of an insolvent obligor. The idea which he intends to express by the word *exclusive*, is, that the amount designated shall be paid without reference to the sum advanced to the husband and wife, or the sum paid to the husband, neither of which I expect to be repaid. That such was his meaning in respect of the advancement, cannot admit a doubt; and it is equally apparent that the same interest was meant to be expressed in respect to the sum paid to the husband himself. Indeed, it is admitted, that it sufficiently appears on the face of this clause, the testator contemplated these two sums as absolute gifts, and that this legacy is to be paid irrespective of them. That the word 'exclusive' was used, in this place, to express this design, must also be conceded. In fact, one of the definitions given by philologists of this word, to wit, 'not to be taken into account,' is all for this purpose.

"In the item of bequest immediately succeeding this, the same word is also evidently used to express the same intent; no two persons learned or unlearned can read it differently. 'I give and bequeath to my said daughter Lydia, $2650, *exclusive of what I have already advanced her*, after her marriage.' That is, in estimating

the value of this legacy, the amount advanced is not to be taken into the account, or, what is the same thing, I give it her besides what I before advanced to her.

"Thus far we cannot hesitate to believe, that beyond doubt we have discovered the sense in which this important term is employed by the testator, in the clauses just passed in review, and it only remains to be seen whether there is any thing in the item upon which the litigation is more immediately founded, which will force upon it a different meaning? In the first place it is to be observed, that the connection in which it is used here, is almost precisely analogous to those which it sustains in the other clauses. Secondly, that so far as it refers to the sums *advanced* to the defendant and his wife, shortly after their marriage, it must mean exactly the same thing as in the other similar items noticed. Can ingenuity suggest a sound reason why a different meaning should be assigned it, in connection with the sentence, and of the money her husband has since received, &c.? The word itself is not repeated here, but the original idea intended to be expressed by it is evidently carried on throughout the whole clause. I give to my daughter Elizabeth, wife of James Smith, exclusive of what I advanced, &c., and of the money her husband has since received, &c. If it is not intended the words should operate with the same force in respect to the money received by the husband, as in the case of the money advanced to both husband and wife, why mention the former at all; and above all, why put it in the same category. If the bequest had been to the daughter alone, exclusive of the money advanced at her marriage, and also of money since received by her, it must be admitted there would be such a strong probable implication of gift or release, that an intention contrary to it could not be imputed to the testator within the meaning of the will. In such case, a judge would feel no difficulty in entertaining a perfect conviction of the testator's intent. But it is said, the fact of the husband having received the money makes a difference, and the answer given to the question last propounded is, that the testator, by the use of the word 'exclusive' in this connection, only meant to say, the particular legacy should be paid to the wife, independent of the debt due from the husband, leaving that to stand precisely as it stood before the will took effect. But that this cannot be so is manifest from more reasons than one. And first, it is obvious throughout this will, the testator recognised and acted upon the legal doctrine of the incorporation of the persons of husband and wife, and treats their interests as one and indivisible. It is so in respect to the advancements made by him, and of the money

paid to and received by his sons-in-law. In the second place, it is not to be supposed the testator was ignorant that, as no separate interest in the legacy expressly given was reserved to the wife, it was, in point of law, a gift to the husband, provided he chose to reduce it into possession during the coverture, and, therefore, in any suit brought for its recovery, the debt due from him to the testator's estate might be set off. To leave then this debt unaffected by the will, would be to defeat the intention, according to the plaintiffs' that the wife should have it, independently of the debt due from the husband. In other words, unless it be holden that the words of the testator operate to give or release the money received by the husband, the wife cannot beneficially take the sum of $3325 exclusive of the debt contracted by the husband, inasmuch as she cannot take it as her separate estate, without the assent of the husband, but the debt, if to be paid, defeats the bequest *pro tanto.*

" But I repeat, and, if I am right in my view of this subject, it is conclusive of this part of the controversy, that the husband and wife are treated as one person, in respect to the property derived or to be derived from the father's estate, and it is all one as if the testator had said, ' I give to my daughter and her husband, $3325 *exclusive* of what moneys they have heretofore, severally, received from me,' &c., &c.

" Nor is the testator singular in the use of the word ' exclusive,' to express something besides, or in addition to that already possessed or enjoyed. Although not grammatically correct, I think, in common parlance, it is often used to convey such an idea. As if a man should say to his banker, ' exclusive of the $200 of mine, which is already in your hands, I will give you $800 for such a house.' No one would doubt, for an instant, that this was an offer to purchase at $1000.

" For these reasons I am of opinion, that upon the words of this will there arises an implication of gift, or release of, at least some portion of the sum received by James Smith, the defendant, from the testator his father-in-law, since his intermarriage with his daughter Elizabeth.

" As almost all the cases cited in the argument to this point were only applicable as showing the general doctrine which governs implied bequests, I have not deemed it necessary to notice them more particularly.

" The second question which the special verdict calls upon us to determine is, whether the whole amount of the money thus received by the defendant or only a part of it, is given or released? And

this presents two sub-questions, namely : first, is the implication to be confined to the twenty-five per cent. of the amount due from Smith to the testator, on the 9th of May, 1827 ? or if not, does it extend to and embrace the whole amount received by the former from the latter, before the date of the last codicil, October 4, 1841 ?

"On the trial, parol evidence was admitted to show the state of indebtedness from the defendant to the plaintiff's testator, at different periods of time, and the general state of their money transactions. It is now argued in support of the first view I have stated, that the special verdict finds there were two distinct debts at the time of the execution of the will, part of one of which was refunded, the other being wholly unrefunded, and, therefore, the testator by the use of the words, *and part of it never refunded,*' must have intended to confine the gift or release to so much of the twenty-five per cent. retained by Smith on the composition as remains unpaid. But there is nothing in the will to warrant this notion. It is at best but a plausible conjecture, and cannot be permitted to have place against the plain meaning of the terms employed. At the time of the execution of the will, the defendant had received, at various times, several sums of money, amounting, in the aggregate, to several thousand dollars. Part of this had been repaid, part of it released, and a bond taken for the balance. Now the will does not speak of any particular sum received, part of which had not been repaid, but generally of moneys received by the defendant, since the time of his intermarriage, part of which moneys so received had not been refunded. It is as if the testator had said, exclusive of *all* the money since received from me, and part of it never refunded. If such a form of phrase had been used, there would have been no room for question, and yet, in my apprehension, the introduction of the word *all*' into the sentence, adds nothing to show the general applicability of the language actually employed. By its natural and unrestrained import, the whole amount received and unpaid is included, and I find nothing in the context of the will to restrict this operation. Nor if we were at liberty to look *dehors* the will itself, do I perceive any thing in the relation of the parties, or their mutual engagements, which would warrant a departure from the common meaning of the sentence.

"But it is insisted that even admitting the bequest embraces the whole sum of $2000, to secure the payment of which the bond of the 9th May, 1827, was taken, the legacy or release was adeemed by the taking of the subsequent bond of 1st April, 1840, whereby the first bond was merged and destroyed. This proceeds upon the

ground that the bequest is of a specific thing or sum, and so it may be admitted to be. But the word 'ademption' when applied to specific legacies of stock or of money, or securities for money, must be considered synonymous with the word 'extinction.' Thus if one bequeath certain stocks, or a certain bond due to him, and afterwards sell the stocks or collect the debt, the legacy is adeemed, not because such is shown to have been the intention of the testator, for the intention to adeem or not to adeem forms no consideration in such case, but because in the one instance the sale of the stock, and in the other, the collection of the debt, is an *extinguishment* of the legacy by annihilation of the subject liable to it. Per Lord Thurlow in Badrick *v.* Stevens, 3 Bro. Chan. Ca. 432, (in the note,) and see 1 Roper on Legacies, 238, *et seq.*, and cases cited. But the mere change of a security for the same debt, or the same and another debt, as by taking a new bond, has never been held to work this effect. Again, where the terms of a bequest are comprehensive enough to include a fund without reference to the form of security taken for its payment, there can be no pretence of an extinguishment of the legacy by force of a change of securities. In such case wherever the fund or money specifically bequeathed remains, there will be no ademption worked by any mere alteration of the securities, as from a simple promissory note to a bond, or from a bond to a mortgage, for the thing bequeathed is still there, and the subsequent alteration of the security does not prevent its answering the description in the will. Now in this instance, the bequest or release is of the money received by the defendants, and not of a particular bond, and though the securities for its payment might have been changed or renewed many times after the execution of the will, the fund or thing bequeathed remains the same. Another answer to this suggestion of ademption may be found in the republication of the will, after the bond now in suit was taken, by the codicil of the 4th October, 1841; but this will be more conveniently considered in the discussion of the next point made by the plaintiffs.

"It is, that the implication can, at most, only prevail to give or release such sums of money as were received by the defendant prior to the execution of the original will, and consequently will not affect the plaintiff's right to recover the sum of $650 33, with its interest, part of the sum secured by the bond in suit, as this sum was not received until the 1st of April, 1839, after such execution. It is in general true, that a last will must be taken to speak from the time of its execution, and in reference to the testator's possessions as they existed at that time, and, therefore, after-acquired property

Vol. IV.—49 2 K

will not pass, though answering the general description of a devise. If, therefore, there had been no republication of this will, subsequent to the receipt of this sum of $650 33 by Smith, doubtless, he could not have denied the plaintiff's right to recover it, on the ground of gift or release to him or his wife.   But if repeated decision can settle any disputable point, it is now incontrovertibly established, that a codicil duly executed, whether expressly confirmatory of the will or not, whether it relate to lands or goods before devised or not, and whether there be one or not, an actual intention to republish, unless a negative intention be disclosed by the codicil itself, operates a republication of the original will, so as to make it speak from the period of the execution of the codicil.   1 Pow. on Dev. 609, *et seq.*, and note 1 by Jarman, to p. 611.   And any property or interest acquired in the interval between the execution of the will and codicil, will pass under a devise or bequest in the will, sufficiently general in its terms to embrace them.   Thus, after-acquired lands will pass under a general devise of lands, though the codicil relates wholly to personalty ; and so of personal chattels or choses in action, though not expressly noticed by the codicil.   So far has this principle been carried, that in Hulme *v.* Heygate, 1 Mer. 285, though the testator expressly devised part of his after-purchased estates, by a codicil, it was held, this did not exclude from the operation of a general devise in the will the other lands so purchased.   And it was held, also, that it was not incumbent on the devisees to show the testator's intention to include this estate in the general operation of the codicil, but on the heir-at-law to point out his positive intention to exclude it from that general operation.   The same is the doctrine of the case of Coppin *v.* Fernyhough, 2 Bro. Chan. Ca. 291.   As illustrative of the extent to which the rule has been carried, the case of Rowley *v.* Eyton, 2 Mer. 128, may be mentioned ; where it was held, that a codicil specifically devising certain lands, had the effect of republishing the will, *so as to subject those lands to a general charge contained in the will*.   The result of the cases is thus stated by Mr. Powell, 1 Pow. on Dev. 616 : 'The effect of a new publication is, that all which the words in the will embrace at the time, when the new publication is made, shall pass thereby ; or, to put it more clearly, when a man republishes his will, the effect is, that the terms and words of the will should be construed to speak with regard to the property the testator is seised of, and the persons named therein, at the date of the republication, just the same as if he had such additional property, or such persons been *in esse*, at the time of making his will ; the conclusion from the fact being, that the tes-

tator, so intended.' And this is a conclusion of law, as we have seen, not to be contradicted by any supposed absence of intention on the part of the testator, unless a contrary intent be manifested by something appearing in the codicil. It is true, it has been made a question by a learned annotator, (Jarman's n. 3 to p. 621, 1 Pow. on Dev.,) whether the principle, that the will speaks from its republication, holds so as to make the devise of a particular property extend (the original subject which it was designed to embrace being gone) to other property answering to the same description, belonging to the devisor, at the period of republication. But it is not necessary to discuss this doubt here, as it has no application in the case in hand. Is there then any thing to prevent the operation of the principle stated, so as to make the present will speak from the time of its republication by the last codicil? The only reason suggested is, that inasmuch as that codicil relates to a subject entirely distinct from that embraced in the clause of the will giving rise to the dispute, it does not appear to have been the intention of the testator to republish the will so as to make it include the money received by the defendant, subsequently to its execution, but rather the contrary. But it has been shown this is not enough. That the codicil relates to another subject, makes no difference, and, as has been observed, the legal operation of the codicil to republish the whole will, just as if it had been then for the first time published, can only be negatived by the contents of the codicil itself, showing by internal evidence, not that such an intention had no existence, but that a contrary intent was entertained. If this be so, the last sum of $660 33, received by Smith, the defendant, passes or is released by virtue of the implication I have endeavoured to establish; for it cannot be asserted with any show of plausibility, that the last codicil to this will, in any degree, proves an intent repugnant to the legal intendment.

"But again, it is objected by the plaintiffs, that admitting the whole amount covered by the bond in suit to be bequeathed to Elizabeth Smith, the defendant, her husband, cannot set it up as a defence in the suit by way of set-off; and authorities have been cited which are supposed to show, that in an action brought by an executor to recover a debt due from a husband, the latter cannot set off a legacy due to his wife. There are decisions which establish a contrary rule, but we pass them by, as the defence here does not proceed on the notion of a set-off. I am inclined to think, the defence may be sustained on the ground that the provisions of this will operate to release altogether the sum due the testator's estate, upon this bond. It is undoubted, that a bequest, properly worded,

may inure to release a debt due from the legatee. Thus in Wilmot *v.* Woodhouse, 4 Bro. C. C. R. 227, when the bequest was 'As I have paid and advanced considerable sums of money for my daughter, &c., I direct that my trustees and executors shall pay, within twelve months of my decease, the sum of £2000 to my said daughter,' the question was, whether the sum of £800 advanced by the testator to his daughter, and for which he took her bond, was released. It was determined it was not, because an intention to release was not clearly manifested by the terms of the bequest, the court observing, 'a gift of a legacy may certainly be so framed as to be a release of a demand.' But can it be doubted, that if the direction had been to pay the sum expressly bequeathed, exclusive of, or in addition to the sums previously paid and advanced by the testator, such a direction would have operated to release such sums? So here, if the bequest was of a certain sum to Elizabeth Smith, exclusive of, or in addition to money received by her since her marriage, I think that no one would hesitate to say, that apart from any other fact, such a bequest would release a demand against her arising from such receipt. Now, I have already endeavoured to show that here, the testator considered and treated the husband and wife as one person representing but one interest, and if this be true, it follows that the bequest to the wife must operate to release the husband's liability.

"But it is asked, how can there be a release of a debt, where the testator retains in his possession, up to the time of his death, the security taken for payment of the debt? In Wilmot *v.* Woodhouse, it is said, the testator, by suffering the bond to remain uncancelled in his possession, showed he did not intend to give it up. But this remark is made by the chancellor while weighing the possibility of a doubtful intention, and not as indicating that such a fact would weigh against an intention either clearly expressed or plainly to be implied. Indeed, many reasons might influence the testator to a determination to retain the security until his will took effect by his death, and among these, would probably be the desire which prevents most men from parting with their property by *donatio inter vivos;* the retention of the power which flows from complete dominion. There is, then, nothing in the fact referred to, sufficient to defeat the strong implication of an intent to release, in this case.

"But let it be admitted the testator did not intend to release the amount of this bond to the husband, but that it is to go by way of gift to the wife; still the defence is sustainable. As it is not a gift to the separate use of the wife, it cannot be denied that, by an exer-

cise of the wife's dominion, which the law transfers to the husband for the purpose of enabling him to take the property to himself, he might, if it were outstanding, assign the legacy for a valuable consideration, or reduce the chose in action to possession, and thus become the absolute owner of it. Siter's case, 4 Rawle, 468; Hind's Estate, 5 Whart. 138; Kreider *v.* Boyer, 10 Watts, 54; Timbers *v.* Katz, 6 Watts & Serg. 298. But what if he already have possession of the thing bequeathed to the wife? He may then make it his own by any declaration, by act or word, manifesting an intent to do so. It is true that if the coverture be determined by his death before such manifestation, the thing or debt bequeathed would survive to the wife; but, on the other hand, as is intimated in Siter's case, to require that the husband should pay to the executors the money due from him to the testator's estate, merely to receive it back again, would be to insist on a useless and idle ceremony. This is not at all necessary to invest the interest absolutely in the husband. Here the husband, being himself the debtor, may, in this action, claim to retain the amount bequeathed to his wife as due from him, and by so doing, he does all that is necessary, and indeed that he can do, short of payment and reclamation of the money, to assert his legal dominion over it. Such a claim is, in equity, a full defence to the action, without the previous assent of the executor. If the estate of this testator were insolvent, or even if that fact were left in doubt by the special verdict, the result might be different, on the ground that the executor is entitled to the assets for the payment of the debts due. But here it is found affirmatively that the estate represented by them is entirely solvent, independently of the debt due from the defendant.

"On the argument, it was faintly questioned whether, supposing the whole amount received by the defendant to pass, the interest which had accumulated also passed. In Roberts *v.* Kuffin, 2 Atk. 112, it was decided that a bequest to the testator's son of £200, secured by a mortgage on a certain estate, and of the messuages, lands, and tenements for securing the same, did not carry the interest which had accrued on the mortgage in the lifetime of the testator; because here was a gift of a particular sum; and it is a rule of construction, that where there is a devise in express words, the subsequent general words shall not extend it further than the natural meaning of the preceding ones. But in the case at bar there is no bequest of a particular sum, but generally of all the money received since a particular time. If it had been, 'I give all the money due and secured by a particular bond,' describing it, I should think the

interest which had accrued would pass as well as the principal sum, for this would be most consonant with the apparent intent, and yet not in violation of any positive rule of construction. It seems to me there is in this respect no difference between this form of direction and that contained in the present will. It is a bequest or release of the whole sum received and due. If it operate by way of release, it certainly extinguishes the interest, and looking to what I take to be the testator's intention, I can perceive no reason why it should not have the effect to pass it, if it is to be considered as a gift or bequest to the daughter. It is at least a question of intention.

" This case is not without its difficulties; and I have, therefore, given it my serious consideration. After reflection, I feel best satisfied to say, for the reasons I have. given, that judgment must be rendered for the defendant."

The admission and exclusion of the testimony, as stated above, constituted the first, second, third, and fifth exceptions, which, with the sixth, which was generally to the judgment, were the only questions argued here.

The case was argued at a previous term, and now re-argued by *Tyson*, for plaintiff in error, and *Lewis*, for defendant in error.

*For plaintiff*—it was said that the bond in suit having been given subsequently to the will, that could have no operation on it; for it showed a subsequent act inconsistent with such a construction, and that the wife only was in the mind of the testator at that time, and that the bonds were treated by the testator as assets. On the question of evidence, there was a patent ambiguity as to which of the two funds was intended; the twenty-five per cent., released under the composition deed, which, under the discipline of the Friends' Society, of which both testator and defendant were members, could be enforced by the society, or the seventy-five per cent., for which a new bond was taken; and that therefore parol evidence was admissible to explain; Doe *v.* Oxenden, 3 Taunt.147; Ca. Temp. Talb. 79, 11 E. 441; 3 M. & Sel. 171; 4 M. & Sel. 550; 1 Johns. Ch. Rep. 231; and for that purpose the declarations of testator as to the fund meant, and the object of this clause, were the best evidence. Even if not admissible in the first instance, it was clearly so to rebut the inference from the parol testimony of defendant, and as he had shown facts for the purpose of arriving at the intention, so they might contradict such implied intention by express declarations. Doe *v.* Allen, 4 Per. & Dav. 223; Jones *v.* Newman, 1 Wm. Black. 60; Trimmer *v.* Bayne, 7 Ves. 518, 1 Rop. Leg. 141. That under the words used

in the supposed discharge, a bond would not pass to the legatee. 15 Ves. 328, 4 Ves. 166 ; 1 Ves. sen. 271 ; Mann *v.* Mann, 1 Johns. Ch. Rep. 231. That the legacy given was adeemed by the subsequent payment to the husband, if that is considered as an absolute gift under the will. Freem. pl. 695 ; 2 Ch. Rep. 35 ; Prec. in Chan. 515, 263, 541 ; 1 P. Wms. 681, 147 ; 2 Vern. 115 ; 1 Stran. 235 ; 1 Bro. Ch. 306, n. ; 3 Ves. 536 ; 3 Atk. 96, 419 ; 19 Ves. 411 ; 18 Ves. 154, n. ; 1 Ves. jun. 112, n. ; 3 Ves. 526 ; 3 Watts, 335 ; 1 Roper, 238. The codicil. can have no effect on this legacy, if it be such, for the date of the will fixes and specifies the amount to be excepted. Throughout the will the daughters and their husbands are treated as distinct persons, and therefore the exception in their favour cannot be held to include a loan to the husband. Dennison *v.* Nigh, 2 Watts, 90 ; Wintercast *v.* Smith, 4 Rawle, 177 ; Robinson *v.* Woelpper, 1 Whart. 179 ; 16 Mass. 480 ; 2 Mad. 133.

As to the word exclusive. It does not mean over and above, but that those debts are not to be considered. [*Per Cur.*—Is it not a synonyme of addition? Does it not, in the other clauses, mean over and above, not to be deducted.] It is contended to mean, not to be taken into the account. [BURNSIDE, J.—Would not the bond have been deducted, if not mentioned.] This construction amounts to a gift of the bond and debt to the husband, when he is not once named as a legatee ; this, in case the obligation remains in the hands of the testator uncancelled, requires a clear and necessary implication, far more so than appears in this case. Clarke *v.* Bogardus, 12 Wend. 69 ; Carey *v.* Gooding, 3 Bro. Ch. Ca. Rep. 110 ; 2 Rop. on Leg. 37, 62 ; Wilmot *v.* Woodhouse, 4 Bro. Ch. Ca. 227, 460 ; 5 Mad. 69.

*Lewis,* contrà.—As to the construction of the will. If the word " beside" is substituted for " exclusive," the intent is plain. The authorities collected in Webster's Dictionary show that the word is used in that sense. So in the acts of 1846, p. 478 ; 4 Bac. Abr. 339, tit. *Leg.* ; beside his cloak, an implied gift of the cloak—it means over and above. Crosbie *v.* Murray, 1 Ves. jun. 555. The testator determined her share as he did in the case of the other legatees on the calculation of three matters. 1. The advancement proper. 2. The receipts by the husband. 3. The present legacy. Were there any doubt as to the meaning, it vanishes on looking at the other provisions, particularly the legacy to Mrs. Walton. The phrase, necessary implication, is held to mean strong probable intent only ; Wilkinson *v.* Adams, 1 Ves. & Bea. 465 ; not natural neces-

sity, but such strong probability that a contrary meaning cannot be supposed. So in Bootle v. Blundell, 1 Meriv. 219, it is said it must be so probable, that a judge cannot suppose a contrary meaning, and in Willes, 140, what is highly probable. Vernor v. Henry, 6 Watts, 202; Vaugh. 262; 3 Bro. Ch. Ca. 236; 2 Mad. 447; 1 Swanst. 28. Nor is there any room for the distinction contended for between securities and debts, for here there is but one security, including all demands. The same sort of words are used in the tax law of 1831, sec. 1.

As to the evidence. It is now perfectly settled that the court receive evidence of the condition of testator's property, &c., for they are the facts with reference to which the written will was intended to apply. Marshall's Appeal, 2 Barr, 388; Wigram on Wills, prop. 5; Preedy v. Holom, 4 Ad. & Ell. 76, (31 E. C. L. R.); 3 Watts, 243; 5 Pick. 512; 11 Johns. 201. This point was fully considered before the twelve judges in Miller v. Travers, 8 Bing. 244, (21 E. C. L. R.) The evidence is limited to explain what the subject-matter of gift was, and never lets in oral testimony of an intention when there is a written will. Preedy v. Holom was a case exactly similar on this point. The English courts regret the admission of testimony to rebut a resulting trust, and we may wisely profit by their example before making a precedent. [Rogers, J.— It has been received here for that purpose.]

The evidence did not show any distinction of funds as contended for. If there were two such, the words of the will must operate on both or neither. As to the supposed deficiency in the assets, the house is not estimated, and that will more than supply the deficiency. Nor is there any argument to be drawn from the fact that on this construction, Susan would receive a smaller share than her sisters. She is very old, and has been supported by her father all her life.

The case would be clear of the objection that the specific debt at the date of the will was intended, on the authority of 3 Bro. Ch. Ca. 416; 3 Meriv. 50; 1 Roper, 246; Gilb. Eq. Ca. 87; 8 Paige, 105. But that is out of the case, the codicil being in law a republication of the will at its date. [*Per Curiam.*—No argument is needed on that.]

*Reply.*—The authorities do not invalidate the construction of the word exclusive. [C. J.—You agree that if inclusive had been used, the fund would have passed as constituting part of the gift. In that case it must have been deducted.] There has been no authority

cited contradicting the implication against a release from retention of the bond uncancelled. [Rogers, J.—Does a testator destroy a bond when he means to release by will? That would be a present gift, and prevent him availing himself of it for his own support.] As to the evidence—[*Per Curiam.*—There is no difficulty if there are two subject-matters. But you want to prove that when a man says the whole, he means only a part.]

*Jan.* 18. Per Curiam.—The judgment is affirmed for the reasons given by the court below.

Bell, J., was at *Nisi Prius* during the argument.