## ALSOP'S APPEAL.

## RILEY'S APPEAL.

Though a will and the codicils form but one testament, and speak from the date of the last codicil, yet they constitute distinct instruments, and a bequest of the residue by the will " to the legatees," will be confined to such legatees as are therein named, and to such legatees as are substituted by codicil for some of them.

Where testator republishes his will and the codicils, and in the attestation styles them codicils, they do not thereby become parts of the will, but remain codicils.

Testator by his will gave certain pecuniary legacies, and directed the residue, if there was one, to be divided *pro rata* among the legatees in the proportion their legacies bore to the residue: by subsequent codicils, he gave legacies to other persons. Afterwards, he made a copy of the original will, and of the several codicils, retaining the original dates and separate executions, and re-executed and republished the same with the several codicils. Held, that the codicil legatees, excepting those substituted for the legatees in the original will, were not entitled to share in the residue, but that it was to be divided exclusively among the legatees named in the will, and those substituted for some of them by codicils.

Testator by a codicil bequeathed to various legatees certain amounts, "5 per cent. C. stock, now in my possession—likewise of said stock—of said stock—of C. stock, and the balance, $4000, to A.," which amounted to $69,000. At that time he held but $64,000 of C. stock. Subsequently, he parted with a portion of the stock: the legacies are *pro tanto* adeemed. Subsequently to the transfer of the stock by him, he recited that there were sundry memoranda of bequests to the families of A. (some of whose children were among the stock legatees) and of B., the particulars of which he confirmed and charged on his estate in the same manner as if therein stated: Held, that the adeemed legacies were not thereby revived; the codicil giving the stock legacies being the only memorandum which could be found.

By a separate codicil of the same date, he recited that he believed he had made further provisions, in the memoranda referred to, for the family of A.; if not, he bequeathed to each of her children by name, $5,000. In his previous will, he had bequeathed to A. a legacy for life, remainder to her daughters. Held, that these legacies were conditional; that testator showed by provisions for " the family of A." he meant her children; and that only such of them as were not provided for in the codicil, not then before him, were entitled to the legacies.

Testator having by his will given a legacy to A., by a codicil reciting the death of A. bequeathed the sum intended for A. to C.: C. is thereby substituted for A.,

and becomes entitled to share in the residue under a bequest to the legatees in the will.

Where a legacy is given in trust for A. for life, remainder over, A. is not entitled to the possession of the legacy.

*Dec.* 13, 14. There were six cases argued together, involving the construction of the will of Richard Alsop.

In 1829, testator, reciting that he was uncertain of the actual amount of his property, which was invested in mercantile operations, but assuming it as $168,000, bequeathed $50,000 to his wife, with a contingent bequest over.

To his mother, Maria Dana, $25,000 absolutely, and $25,000 for life, remainder to his sister, Frances Alsop, for life, should she survive his mother, with power to dispose of it by will, and in the event of her not surviving his mother, to his mother absolutely.

To the three children of his sister, Caroline Oliver, $25,000, equally to be divided.

To his time-honoured aunt, Clara Pomeroy, $15,000, to be invested for her use for life, remainder to her daughters surviving her, Caroline, Mary, Clara, and Ann.

To his aunt, Hannah Riley, $9,000, to be invested for her for life, remainder to her daughters according to the apportionment of the eldest, surviving her mother.

To his aunts, Fanny and Mary, should they survive him, $5,000. To his friends, Elizabeth Pomeroy and Eunice Bassett, $300. To his cousins Clara, Elizabeth, Mary, and Lucy, $1,500 each. To George Shipman, $3,500; to Gustavus Cleemann, $3,500; to R. A. Eyre, $1500.

Provided his property produced $168,000—but the legacies to his wife and mother were to be first paid, and they were to share alike in any event, and if the property fell short of the other legacies after the payment of those to his wife and mother, then those given to his four aunts and the children of his sister Caroline should be paid in the proportion they bore the estate, i. e. "suppose $20,000 remain after paying the legacies to my wife and mother, then say, if the collective sum $49,000 give $20,000, what will $15,000 give, being the proportion of my deceased sister's children: answer, their proportion will be $6,122.44." If a residue remained, though insufficient to pay all the legacies, they should be paid in full in the order they stood in the will. If the property exceeded $168,000, the same was to be "divided *pro rata* among the different legatees; that is, in manner following:—suppose $20,000 remain over and above, then say 168,000 (:) 20,000 (::) 50,000 my wife's

proportion being first established, which would give her $5,952.32, or thereabouts, and so on with the others."

In 1840 the testator made a copy of the above will, and also of certain other testamentary papers in the following order (some immaterial codicils are omitted), each one being signed by him.

1834. Declaring that certain real estate settled on his wife was not to be taken into the account ŏf his estate, and that his bequests to her in " this will are over and above that property."

1833. Reciting the death of R. A. Eyre, and bequeathing " the sum intended for him to the youngest daughter of my friend and neighbour, J. Sergeant."

1833. Rescinding the bequest to G. P. Shipman, and " desiring the amount intended for him to be added to my bequest to Gustavus Cleemann."

1839. " In addition to the bequests already made in this my will to my wife," he gave her his dwelling-house and all its contents, stables, carriages, horses, &c.

1839. " In addition to the bequests herein made," he gave to his cousin, Charles R. Alsop, $10,000, to be paid after the legacies to testator's wife and mother, and $10,000 to his children; also $5,000 to his aunt Abigail, $5,000 to her daughter, and $2,500 to her son, together with any balance due from him to testator.

1840. " In consideration of their fidelity," he bequeathed to his housekeeper $500, to a maid servant $200, and to his coachman $100.

Following these writings, under date New York, Nov. 10, 1840, testator wrote and signed the following :—" The preceding is a copy of a will made by me in Philadelphia, on the 12th of October, 1829, together with copies of sundry codicils affixed to the margin of said will, which is now deposited, &c., all of which are confirmed by me. In addition to which there are, I believe, in one of the drawers of my secretary several memorandums of bequests bearing my signature, to the families or members of the families of my uncle Pomeroy, and of my aunt Hannah Riley, the particulars of which I do not now recollect, but all of which I do now confirm and charge upon my estate in the same manner as if they were herein stated." He then disposed of a share in his mercantile house, and gave two legacies of $10,000 each.

By a separately executed instrument without date, but which was evidently written on the same day as the preceding clause, he bequeathed a number of legacies, and then continued :—" I believe I have made further testamentary provisions on the memorandums referred to as being in my secretary, for the family of my aunt

Hannah Riley, and should I not have done so, then I give and bequeath to each of her children," naming them, ten in number, $5,000 each—declaring it to be his intention that none of the "sundry" legacies were to be paid until those to his wife and mother were paid—then in the order they stood in "this writing."

On the 10th of November, 1840, he executed and published this testament in the following words:—"Signed, &c., the foregoing four sheets of paper, together with all and several the separated memoranda and codicils therein referred to, as and for my last will and testament."

In the preceding June, by a separate codicil, he recited that he had intended to make a new will, and should have added a codicil to one he had made some years before; but not finding it, he desired to add thus much: he then gave "to my aunt Clarissa Pomeroy, $10,000 Cincinnati five per cent. stock, now in my possession;" to her two daughters $10,000 likewise of Cincinnati city stock, and various other legacies, specific in amount, to his cousins, the Rileys, by name, "of said stock," or "of Cincinnati city stock," or "of said Cincinnati city stock," "and the balance, $4,000 Cincinnati city stock, to G. Cleemann—this is a distinct legacy, to be paid without reference to any other bequests, after my debts shall have been paid."

By an undated codicil, he again declared that his dwelling-house, &c., and a lot on Broad Street should go to his wife; and by another, dated July, 1840, he specifically bequeathed a mortgage to R. A. Riley, and a share in his mercantile house to his nephew, Theodore Riley, "always providing for the payment in full in the first instance of the legacies devised to my mother."

These were all the testamentary papers which could be found, and they were all admitted to probate.

There being a large personal surplus after paying all the pecuniary legacies, the questions argued were:

1. On the legacies of the Cincinnati stock.

It was proved that at the date of this codicil, the testator held sixty-four Cincinnati bonds for $1,000 each. The amount bequeathed by him in this codicil was $69,000. In November, following the date of the codicil, he made a settlement of certain partnership transactions with one Wetmore, who "took to himself" one-third of this stock, and afterwards purchased part of one of the remaining bonds, leaving in the possession of testator, at the time of his death, but forty-two of the bonds.

The court below decreed these legacies should be made up to the amounts bequeathed out of the general residue.

2. This arose on the last codicil, giving pecuniary legacies of $5,000 to each child of Mrs. Riley.

The court decreed that so far as there had been previous provisions made for these legatees, these legacies failed, but they took effect in favour of those children not otherwise provided for. Among these was T. W. Riley, whose legacy, by the codicil of July, 1840, had been adeemed by a sale of that share by testator.

3. The question here was whether the codicil legatees and the devisee of the land were entitled to share in the distribution of the residue.

The court decided that both of these classes and the specific legatees should share the residue *pro rata*.

4. Whether Mrs. Pomeroy, whose husband, living at the date of the will, was since dead, was entitled to the possession of her legacy, or whether it should be held, as the court decreed, in trust for her.

*Price* and *Meredith*, for the children of Mrs. Riley.—These legatees are entitled to have the stock legacies, which are deficient by reason of a sale by the testator, made up. Had the codicil of June, 1840, stood alone, they would have been specific legacies, and hence adeemed; but on the 10th November, 1840, only seven days after this sale, he expressly confirms this codicil, and charges the legacies on his estate. It will be said the clause is to read as if he had merely incorporated the words of the codicil into his will, but then the charging them on his estate would be superfluous. It is unreasonable to suppose so absurd a design in a testator, who must have known that he had by the sale prevented the operation of his bequest. The inclination always is to make legacies general: 7 J. C. R. 263; and what will be specific, if testator retains the thing, may become general on his parting with it: 9 Price, 94. So if there is an independent intention to give: 2 Mad. 222. Here the charge on the estate is of. that nature, for at that time he had not the stock, and hence it must be purchased: 1 Rop. Leg. 158. Without this, those words are excluded, which is never to be done if it can be avoided: 2 Mer. 25; 19 Ves. 654; 3 Yeat. 187. It is, moreover, declared that he has left several memoranda of bequests, none of which are to be found but this; and he has declared that this is to be a distinct bequest. Nor do the words require an application to this stock; the five first legacies do not exhaust it; and those only refer to this. [BELL, J.—The concluding sentence, " the balance," &c., makes all the previous words specific.] That is the balance of the sum he intended to give,

which exceeded the stock he held, especially when it is remembered at the time he had but a partial interest with Wetmore. The cases cited on the other side are where the legacies were clearly specific, and no charge or republication. In this respect the decree was right.

2. The $5,000 legacies to the Rileys, by the last clause of the will, are cumulative. The only other provisions on the non-existence of which they are said to be conditional, are the stock legacies, just considered. These are not to the same persons, but to some of them; nor of the same nature—one stock, the other money— the amounts do not correspond. The testator says there are " several memorandums," but one only is found. The stock legacies are to be " a distinct bequest," while these are not to be paid until the wife's and mother's. Those are to the Pomeroys and Rileys; these refer to the latter only. He says he has made further provisions for the Riley family, but the stock legacies are a provision for that family and another. The presumption is in favour of accumulation : 2 Rop. 20; which is increased if the amounts differ : Ib. 19–23; 2 Russ. 257–62.

3. All the legatees share in the surplus, under the clause in the original will. For the codicil and will together make but one instrument : 11 Sim. 216; Amb. 556; 1 P.Wms. 423; 2 Cox. 35; 4 Met. 63; 4 Barr, 377; 2 Mer. 128.

The cases cited on the other side are where there were express words, confining the right to participate to the legatees named in the body of the will. But all doubt is removed by the express republication of the whole instrument, including previous codicils, as one will. The specific legatees are also entitled (7 Ves. 392), but not the devisees; for it is only " legatees" who are by the will to share, and the devisees are not described : Ward on Leg. 1; Bouv. Dic. *Devise.* A lapse of their devise would not increase this residue : 3 Whart. 477; nor can the executors take it : 6 Barr, 435; 2 Ves. jun. 230.

*S. Lewis,* for Mrs. Pomeroy and her children.—The death of her husband has removed the disability, and hence she may take absolutely : 3 Wh. 62. He also took the same positions as have been stated, with respect to her and her children's rights to have the stock legacies, which are deficient by reason of a sale by the testator, made up.

*Gerhard, F. W. Hubbell,* and *J. Sergeant,* for the widow and legatees in the original will and the executors.—The executors only

desire protection in paying over Mrs. Pomeroy's legacy; it is not hers absolutely, but devised over.

1. The stock legacies failed because the testator had it not, and because they were adeemed by a sale. The codicil of November merely confirms them, as if therein copied: it was not present to the testator; and can it be supposed that by these words he would make an exception to his otherwise uniform intent, and hazard the payment of the legacies to his wife and mother, by giving $69,000 absolutely? Clearly the confirmation only makes it a part of the will, and the charge is on so much of stock as shall remain; it is to have the same effect, he says, "as if they were herein stated."

The words, "this is a distinct legacy," only refer to that one given to Cleemann; if to the whole, it yet more strongly determines the specific nature of the legacy.

2. The $5,000 legacies are clearly conditional, on his having omitted a provision for the family there provided for. Such a provision is found in the bequests to his aunt, the mother of the family, and to certain members of it, her children.

3. The argument is based on the technical rule, that codicils form a part of the will; and this is true under certain circumstances, but does not apply where testator is speaking of legatees in the "will," which is the instrument, and is distinguished from "testament," which includes will and codicils: 2 Ves. 242; Belt's Sup. 333. In 13 Ves. 379, this was applied; and legacies by an unattested codicil were held not to be charged on the land, under a clause charging all legacies "hereby given." So where the residue was divided among legatees "in proportion to the legacies bequeathed by this my will:" 1 Mer. 22; and where it was given among "my before-mentioned legatees, in proportion to their legacies hereinbefore given:" 9 Sim. 515.

The general rule contended for does not prevail where an opposite intent is manifest, but the will and codicils are treated as distinct instruments: 2 Beav. 95; 3 Ib. 450; 2 H. Bl. 213. Now the whole testament strongly indicates this intent. By the will, the estate was disposed of; as it increased, certain definite portions are taken out of the residue. Suppose there had been numerous lapsed legacies, the servants would have received large estates instead of small legacies as intended. It is clear then, that only the legatees named in the will, and those substituted for some of them, are entitled.

Bell, J.—Was the court below right in decreeing that the

codicil legatees are entitled to participate in the distribution of the testator's residuary estate? This was discussed as the leading question presented by these appeals, and I, therefore, propose first to consider it. In deciding it affirmatively, the auditor, whose reasoning appears to have been adopted by the Orphans' Court, proceeded upon the ground that a codicil is in law considered as part of the will, and though an addition, yet forming with it but one instrument. As a consequence of this principle, it is said the whole is to be regarded as having been published at the same moment of time, and, therefore, the provisions and general expressions of the will proper, are to be interpreted in connexion with, and as inclusive of the dispositions made by the codicil.

There can be no doubt that the making of a codicil operates as a new publication of the will to which it is attached, or has reference, and, as a general rule, the effect is to make the words of the will speak, in respect to the persons and things named in it, as from the date of the publication, just as though it had then been made for the first time. Thus it has been held in numerous cases, that a general charge of debts and legacies on the land of a testator, will include legacies given subsequently by codicil: Hannis v. Packer, Amb. 556; Brudenell v. Boughton, 2 Atk. 272; Cox v. Basset, 3 Ves. 163; Rooke v. Worrall, 11 Sim. 216; and a will discharging *all* debts operates to release a new debt incurred between the date of the will and the last codicil, though there be no reference to such debt, and no express words of republication: Coale v. Smith, 4 Barr, 377. This is a conclusion of law not to be contradicted by any supposed absence of intention on the part of the testator. But like every other general and artificial rule applied in the construction of wills, it gives way before an ascertained adverse intent. Where such actual intent appears, the will and codicil will be treated as distinct instruments, in order to give it effect, though in legal contemplation they are regarded as one testament. This distinction is very clearly pointed out in Fuller v. Hooper, 2 Ves. sen.; Belt's Supp. 333, where a testator gave legacies to all her nephews and nieces except those *thereinafter named*. She desired her executors to look upon all *memoranda* in her own hand, as parts, or a codicil to her will; and bequeathed the residue of her estate to the children of her sister, E. J. By a codicil, she gave legacies to other nephews and nieces. It was held that the children of E. J., the residuary legatees under the will were excluded from the general legacies, but that the legatees under the codicil were not, and were entitled to both. In deciding the case, Lord

Hardwicke said—and his remarks are recommended by their good sense—"A will is to be considered in two lights, as to the testament and the instrument. The testament is the result and effect in point of law, of what is the will; and that consists of all the parts, and a codicil is then a part of the will, all making but one testament: but it may be made at different times, and under different circumstances, and therefore there may be a different intention at making the one and the other. The instrument is that writing in which the will is contained: the testatrix here meant to refer to the instrument, not to the testament, which takes in all the parts."

This distinction, showing that though, for some purposes, a will and codicil are to be regarded as making but one testament, they will not be considered as a single instrument where a manifest intention requires otherwise, is observable in most, if not all, the cases. Of this, Bonner *v.* Bonner, 13 Ves. 379, may be regarded as a signal instance. It was the devise of the trust of a term to pay the several legacies "hereby given," and "the several other legacies hereinafter bequeathed." In a subsequent part of the will, a few small legacies were bequeathed, and afterwards, by a codicil unattested, reciting that the legacies given by the will to the testator's daughters were not an adequate provision for them, he gave each of them a further legacy of 800*l.*, "in addition to the said legacies given them, respectively, by his said will," and ordered that the codicil should be taken as part of his will. The bill was to have the additional codicil legacies charged on the term, the personal estate being insufficient. For the daughters it was urged that in the construction of the trust of the term, the "legacies hereinafter bequeathed" must be taken to mean in the whole will taken together, including the codicil, which is part of the will, and making it to speak at the subsequent date, the intention being to incorporate the legacies of 800*l.* with the former legacies, as the latter were given in addition, &c. For the defendants it was insisted the legacies given by the codicil were not charged; that the charge of the legacies "hereby given," must be understood already given, and the subsequent words "hereinafter bequeathed," must be intended bequeathed by the same instrument, by which were given some other legacies. And of this opinion was the lord chancellor, who regretted the construction he was obliged to adopt, as very unfortunate for the daughters; but he could not declare the codicil legacies to be charged on the land, saying, "Here is not a general charge of legacies." This was but following in the track of Masters *v.* Masters, 1 P. Wms. 422, where it was held that though a

general charge of debts and legacies on land, in aid of the personal estate, will carry codicil legacies, though unattested, the rule is otherwise where the land is only particularly charged, as with legacies "hereby" or "hereinafter given," or "above mentioned," because the intention of the testator is otherwise. To the same effect, in principle, and for the same reason, is Henwood *v.* Overend, 1 Mer. 22; and Hall *v.* Severne, 9 Sim. 515. In the first of these, after several legacies, there was a gift of the residue " to be divided among my legatees, in proportion to the legacies *bequeathed by this my will.*" This was restricted to the general pecuniary legatees named in the will, in exclusion of legacies payable out of a specific fund in future; and of legacies given by codicil, *though there was a direction that the codicil should be taken as part of the will.* Sir William Grant, who ruled the case, thought it was governed by Bonner *v.* Bonner, saying, the words " by this my will," were full as strong as " hereby" and " hereafter," as a restrictive phrase. In the last case I have adverted to, after pecuniary legacies to several persons, the testator directed his residue to be divided amongst " my before-mentioned legatees in the proportion of their several legacies, heretofore given and bequeathed to them." Afterwards, by a codicil, *which he directed to be taken as part of his will,* he gave pecuniary legacies to several persons, some of whom were legatees under the will, and declared that the several legacies mentioned in the codicil were given to the therein mentioned legatees, in addition to what he had given any of them by his will. It was held that none of the legatees under the codicil were entitled to share in the residue, in respect of their legacies under the codicil.

These adjudications, and others of a like character, show that questions like ours are questions of intention, as indicated by the language used. We are thus narrowed down to the inquiry, whether from the face of the will alone, or taken in connexion with the several codicils, an intent can be gathered to confine the distribution of the residue among the legatees named in the will proper? It will scarce be denied, that on the 22d of October, 1829, the date of the original will, none others were contemplated by the testator. By the directions then penned, if the whole property to be left should exceed the sum of $168,000, the surplus was to be distributed among the different legatees *then* ascertained. This was a clear and undoubted bequest of the residue to *them,* though conceived in terms somewhat different from those usually employed to express residuary gifts. To these were given, in as-

certained sums, what the testator conjectured to be the then value of his whole property as nearly as he could approximate it, and among them was also given, by a *pro rata* distribution, any excess of value he might die possessed of. Of this, each was to take in exact proportion to the sum specifically given, until the whole excess should be exhausted. Thus, Mrs. Alsop's ascertained legacy was $50,000, and she was to have of the residue in the proportion this fixed sum bears to the supposed value of the whole property, and to the possible surplus, "and so on with the others." What others? Those to whom pecuniary legacies had before been given, and in the same ascertained proportion. These, and these only, the testator had in his mind when providing for the distribution, and the exact sum given to each is the only standard furnished whereby to measure the several unequal divisions of the surplus. Now, surely, this is as plainly restrictive of the gift to those particular legatees as are the words "hereby given," and "hereinafter bequeathed," used in Bonner *v.* Bonner; "hereinafter named," in Fuller *v.* Hopper; "before-mentioned legatees," in Hall *v.* Severne; "hereby bequeathed," in Radburn *v.* Jarvis, 3 Beav. 450; and "to be divided among my legatees in proportion to the legacies bequeathed by this my will," in Henwood *v.* Overend. In all these cases, the decisions proceeded upon the ground that the residuary provision pointed to the legatees ascertained by the will; and there is certainly nothing in any of them to denote this more unerringly than the language of our will, properly understood. Indeed, the last cited differs from this but by the words "by this my will;" and this difference, it seems to me, is more than supplied by the peculiarity of the directions used here. Of the residuary legatees, Mrs. Alsop is specially named, under the appellation "my wife." Had the other legatees of the will proper been also specifically named, or otherwise specially pointed out as those who were to take the residue, there would have been no room for cavil. And yet this would have been no stronger evidence of intent than we have in the sentence, "my wife's proportion being first to be established, which would give her $5,952.32, or thereabouts, *and so on with the others.* "My wife," and "the others" form a class of persons just as certainly ascertainable as if the words, "named in this my will," had been added to the sentence. It is as restrictive and exclusive without as it would be with them.

Nor do I see anything in the codicils at all inconsistent with this view. With the exception of the substitution of Miss Sergeant and Mr. Cleemann for two of the primary legatees, which worked

no alteration in the proportional distribution of the residue, the will remained untouched, in fact, until January, 1839, when specific things were devised and bequeathed to testator's wife; and December, 1839, at which time a codicil was executed, giving to Charles R. Alsop $10,000, "to be paid after the legacies to the testator's wife and mother were paid." The first of these gifts is expressed as " in addition to the bequests already made in this my will to my wife Aimee," and the second is said to be "in addition to the bequests herein made." This language is easily accounted for from the fact that these codicils were endorsed on, or written in the margin of the original will; and it cannot fairly be taken as evidencing any desire felt by the testator to treat the codicils as being incorporated with and forming an integral part of the will, considered as an original instrument. But it is thought the preference, as to the time of payment, extended to the last-mentioned legacy : the direction to pay the stock legacies, without reference to the other bequests, immediately after the discharge of debts, and ranking the legacies afresh by the codicil of November, 1840, indicates an intent to obliterate all distinction between the will and codicils, as distinct instruments. I cannot perceive how such an inference is legitimately to be deduced from these facts. The stock legacies are specific, and of course payable without reference to any other. The preference given to Charles R. Alsop is confined to him and to his particular bequest. It extends to nothing else; and its only effect is *pro tanto* to disturb the order of payment prescribed for the ascertained legacies. It in nowise interferes with the residue. This is not distributable until all the other legacies are satisfied. We have here, as I think I have shown, a general intent manifested, that the first-named legatees should take the residue. To this is subsequently added a particular intent, in favour of the legatee Alsop. This particular intent must be so construed as, if possible, to reconcile it to the general intent; and in this I see not the least difficulty, in the absence of every adverse expression on the part of the testator. The words of the codicil give to the legatee $10,000. This is to be paid to him at a particular time, or in a particular order. But why should this increase the amount bequeathed to him ? The testator has not said it shall work such an effect, and it is not necessarily to be implied from anything that is said. Give to this legatee what the codicil says he shall have, and you leave the provisions of the will undisturbed. Ascribe to the codicil the occult addition claimed for it by the appellants, and you at once interfere with the primary intent evi-

denced by almost every line of the original instrument. I find no warrant for this in any rule of construction with which I am acquainted. On the contrary, a codicil, which is but an addition to a will, is no revocation of it, except where it is inconsistent with it, or there be words of revocation, or a necessary implication : 4 Kent's Com. 531. These remarks are applicable to all the *addenda* made to this will. The propriety of the conclusion to which they tend is vividly shown by the fact, that if the pretension of the codicil legatees be sustained, they would, as the codicils originally stood, take of the residue in the proportion which $359,850 bears to $173,000. Such a result can scarcely be thought as within the contemplation of the testator. The certainty that it was not, is almost, if not altogether, established by a reference to the codicil of January, 1840, immediately preceding the final dispositions. By it, certain small gifts are made to three of his servants. Did he contemplate that these, too, should take a proportionate share of the residue—at that time greatly augmented, as he must have known ? It seems impossible to give credence to such a proposition. It is clear his only object, as to them, was to reward faithful service by the donation of a fixed sum of money, and nothing beyond. And yet, so far as language is expressive of design, they are put in the same category with the other codicil legatees, in respect of the *residuum*.

We are unable to discern anything in the codicil of November, 1840, competent to shake our convictions upon this point. That part of it referred to for this purpose, is employed but to marshal the order of payment, beginning with the will, in which, in this respect, it makes no material alteration, and thence progressing through the codicils. But this is confined to the ascertained legacies. It professes not to intermeddle with the residue, and therefore contains nothing inconsistent with its primary disposition. Indeed, I think it perfectly apparent he had not this in his mind when this codicil was penned. His sole object was to give to certain persons certain sums, and to prescribe the order in which those sums should be paid. This he accomplished, but in doing so went not beyond a clear expression of the particular intent. In this there is no incongruity—nothing to mar the symmetry of the original scheme. It therefore falls within the principle already adverted to.

The general view I have taken is greatly strengthened by the fact that so late as 1840, the testator caused his will and all the codicils then at hand to be copied and republished ; but not, as the

counsel of Mrs. Riley argues, as a single, uncompounded instrument. On the contrary, he expressly declares the paper then published to be a copy of a will made by him in Philadelphia, on the 12th of October, 1829, "together with copies of sundry codicils affixed to the margin of said will, and perhaps on separate pieces of paper enclosed with said will," and refers to certain other *memoranda* of bequests, not at the moment in his immediate possession. Now what is this but a solemn reiteration, in 1840, of his will, exactly as it stood in 1829, subject to all the legal consequences that then attached upon it, and of the various codicils, merely as *addenda?* Nor is there anything in the formal words of republication contradictory of this. · They aver the whole to constitute the last will and testament, but expressly treat the different portions as distinct instruments. In this, it is but in accordance with the numerous cases in which is found an express direction to take the codicil as part of the will, but which, as we have seen, of itself works no alteration in its legal effect.

As, then, there is nothing in the various *memoranda* or codicils inconsistent with the primal disposition of the residue, and, certainly, nothing either expressly or by necessary implication repealing it, but, on the contrary, much to uphold and sustain it; we cannot concur with the decree below, letting in on the surplus fund all the codicil legatees. Our objection, however, is inapplicable to Miss Sergeant and Mr. Cleemann, so far as they are substituted for two of the original legatees. This substitution operates to subrogate them to all the rights of the parties first named.

It is, secondly, objected to the decree made by the Orphans Court, that it directs so much of the Cincinnati City stock bequeathed to Clarissa Pomeroy and others, as was adeemed or otherwise not in the possession of the testator at the time of his death, to be replaced for the benefit of the legatees. We think this objection is well founded. It is properly admitted, that, as originally given, these bequests were specific, and so liable to a *pro rata* abatement in the event of a deficiency. This is conclusively shown by the cases cited on the argument, among which is our own determination in Blackstone v. Blackstone, 3 W. 335. But it is thought the codicil of November, 1840, confers upon these bequests a new quality, which protects them from the blighting influence of the ademption.

It is unquestionable that the republication of a will, either formally, or by annexing a codicil, will not restore specific legacies before adeemed, or otherwise not held by the testator. The power

of restoration is, however, sought to be attributed to the codicil of November, because of its confirmation of the imperfectly recollected *memoranda* of bequests made to the Pomeroy and Riley families, and the charge thereof on the testator's estate.    It is said this is a general and unrestricted charge, which invests these bequests with the character of general pecuniary legacies.    But this position is founded in a misapprehension of the terms employed. The charge is not a general one.    It is obvious that at the time this codicil was written, the testator's memory on the subject of these bequests was vague and shadowy.    He did not recollect the particulars.    He was, therefore, unable to repeat them, as he had the other codicil legacies.    Yet he was anxious to exclude the conclusion that his omission to do so was intended to wipe them entirely out.    To prevent this, he makes reference to them, and confirms them "in the same manner as if they were herein stated."    By this, nothing more was meant than that they were to be regarded as if repeated in their original terms, in the same manner the other prior codicils were republished.    This left them precisely where they stood before—specific legacies.    To determine otherwise, might involve a gross violation of the preference so often and so emphatically given to the legacies bequeathed to the wife and mother; for, by treating them as general pecuniary bequests, payment of their whole amount might be successfully claimed, at the expense of those who were evidently the first object of the testator's bounty.

The remaining inquiry is, whether the respective legacies of $5,000, given to the members of the Riley family by the codicil of November, 1840, are cumulative, and not merely a repetition of the stock legacies just mentioned?    Not being able to refresh his memory by an inspection of the separate pieces of paper upon which the codicils were written, the testator begins by stating he believed he had made further testamentary provisions in the *memoranda* before referred to, as being in his fire-proof or secretary, in Philadelphia, for the family of his aunt, Hannah Riley.    He then proceeds, "Should I not have done so, then I give and bequeath to each of her children (naming them) the sum of $5,000."    By the will proper, he had before bequeathed to Mrs. Riley the income of $9,000, and directed the principal sum to be apportioned, after her death, among her married and unmarried daughters. This must have been the antecedent referred to by the word "further," as used in the codicil; for, though not a provision for every member of Mrs. Riley's family, it was the only testamentary gift

to any of the family then before him. In speaking, therefore, of the other supposed bequest, of which he had not the memorandum, he necessarily had reference to the bequest in the will proper, in respect of which the other was a further provision. This proves, that in his apprehension a provision for the family did not necessarily include every of its members. Consequently, the omission of three of them in the bequest of the stock legacy, furnishes no sufficient reason for shutting it out as the "further provision" spoken of. If it be so—and notwithstanding the verbal criticisms to which it has been subjected, I see not how it can be successfully questioned—the condition upon which a legacy of $5,000 was to go to each of the Rileys, fails. It matters not that there is a diversity between the two latter provisions, in the sums to be paid, the mode and time of payment, and the number of persons to be benefited. It is sufficient to defeat the legacy of 1840, that a prior, further provision had been made, though admitted to be less advantageous to all the members of the family, than the later one.

In view of the partial failure of the stock bequests, the result of this construction may operate harshly. But the language is too plain to admit an alternative; and however we may regret it, we cannot help it.

But the last codicil sufficiently indicates an intent to give to each member of Mrs. Riley's family; an intention which, we think, may be carried into effect without doing violence to the will, considered as a whole, or being driven to conjecture. By the stock bequest, no "further provision" was made for Caroline Riley, Theodore Riley, and Mrs. Greenleaf; and they may, therefore, fairly be said to stand within the contingency contemplated by the testator, as giving title to $5,000 each. This is, perhaps, not literally the language of the will, but we think it is within its spirit. Properly interpreted, it may be taken to mean, "to those of the family for whom no further provision has been made, I give $5,000 each." As I gather from the report of the auditors, the half-share in the house of Alsop & Co., bequeathed to Theodore Riley, by the codicil of July, 1840, was adeemed before the codicil of November, 1840, was made. Consequently, at that time, he was no further provided for; and from this it follows, there exists nothing to exclude him from participation in the last gift.

The legacies of $25,000, of which Mrs. Dana is to have the income during her life; of $15,000 for the use of Mrs. Clara Pomeroy; of $9,000 for the benefit of Mrs. Hannah Riley; and

of $10,000 to be settled on the wife and children of C. R. Alsop, are directed to be securely invested for the uses of the respective trusts thus created. This duty devolves upon the executors; and consequently that portion of the decree complained of in the sixth exception of Mrs. Aimee E. Alsop and others, is ill founded. That exception is therefore overruled.

Decreed accordingly.