## Edwards's Estate.

*Wills—Codicils—Republication of wills—Construction — Intention.*

1. Although a codicil confirming a will makes the will for many purposes to bear the date of the codicil, yet this rule is subject to the limitation that the intention of the testator is not to be defeated thereby. If, therefore, the testator in making his will, obviously means its provisions to apply to a state of circumstances existing at its date, republication will not make its provisions apply to the state of circumstances existing at the date of the codicil.

2. Where a testatrix provided "I leave no large debts and any indebtedness to me is hereby cancelled," and thereafter loaned

$32,000 to a son-in-law taking collateral security for the same, and subsequently by codicil republished her will and retained possession of the collateral, the Orphans' Court properly construed the codicil as not having the effect of cancelling the indebtedness of the son-in-law.

Argued Oct. 12, 1915. Reargued March 13, 1916. Appeal, No. 125, Oct. T., 1915, by Katherine M. Edwards, Charles E. Dickson and The Safe Deposit & Trust Company of Pittsburgh, Executors of the Estate of Eliza Thaw Edwards, Deceased, from decree of O. C. Allegheny Co., Sept. T., 1914, No. 443, dismissing exceptions to adjudication, in Estate of Eliza Thaw Edwards, Deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Exceptions to adjudication. Before MILLER, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Katherine M. Edwards, Charles E. Dickson and The Safe Deposit & Trust Company of Pittsburgh, Executors of the Will of Eliza Thaw Edwards, deceased, appealed.

*Errors assigned* were in dismissing the exceptions.

*William Watson Smith*, of *Gordon & Smith*, for appellants.—When the testatrix republished her will she clearly intended to cancel the indebtedness owing to her by Mr. Dickson: Coale, exec. of Brinton, v. Smith, 4 Pa. 376; Linnard's App., 93 Pa. 313; DeHaven's Est. (No. 2), 207 Pa. 152; Tyson's Est. (No. 1), 47 Pa. Superior Ct. 108.

It is not material that at her death, the testatrix retained the note and securities given by Mr. Dickson: Alsop's App., 9 Pa. 374.

*John D. Brown*, with him *E. E. Kiernan* and *John E. Winner*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, May 23, 1916:

Eliza Thaw Edwards died on May 13, 1912, testate, leaving to survive her four daughters, Burd B. E. Dickson, wife of Charles E. Dickson; Katherine M. Edwards, Eliza T. Edwards and Mary L. Edwards, and five grandchildren, the children of Mrs. Dickson. She appointed as her executors Katherine M. Edwards, Charles E. Dickson, and The Safe Deposit & Trust Company of Pittsburgh, to whom letters testamentary were granted on May 20, 1912. Mrs. Edwards's will is dated August 8, 1906, and she added a codicil, dated August 3, 1908, and a second codicil, dated July 27, 1911. The will and codicils are holographic, and the latter are in the form of letters addressed by the testatrix to her daughters. The will disposes of the whole estate, directs that the testatrix's four daughters shall participate equally in the distribution of the estate, and declares: "I leave no large debts and any indebtedness to me is hereby cancelled." The first codicil suggests the death of certain legatees, makes alterations and substitutions in certain legacies, cancels legacies given to servants who had left her service, and adds: "To my son-in-law Charles E. Dickson who has been a great comfort to me I leave $5,000." In beginning the second codicil, the testatrix says: "I have read over and resealed this will each summer before leaving home, and now wish to make the following changes." She then directs that a legacy given a relative, since deceased, shall revert to her estate, and that legacies to two friends shall be increased. She expresses a wish that her trust estate shall be increased by certain accumulations, "each daughter to have equal share of income from same" for life, and that some of her silver be given to certain relatives.

The executors filed a first and final account to which numerous exceptions were taken by Mary L. Edwards and Eliza T. Edwards, one of which is that the accountants erred in not charging themselves with the amount of the note of Charles E. Dickson for $32,000. On December 27, 1910, Mrs. Edwards loaned the money to Mr. Dick-

son and took his promissory note with his bond and mortgage for $19,000 and 645 shares of stock in certain business corporations as collateral. The note and collateral were in Mrs. Edwards' possession at the time of her death and passed to her executors. It will be observed that the loan was made and the securities taken about four years after the will was executed in which she cancelled any indebtedness due her, and just seven months before the second codicil was made. The executors took the position that the Dickson note and the collateral securing the same were cancelled and annulled by the will and codicils, and, therefore, did not include the note in the inventory or their account. The Orphans' Court held that the debt was not cancelled, sustained the exception, and surcharged the executors with the amount of the note and interest thereon from its date. The executors took this appeal.

In sustaining the exception to the account and surcharging the executors with Mr. Dickson's note, the learned auditing judge, whose adjudication was confirmed by the court in banc, said: "The language used by the testatrix that all debts are forgiven cannot be construed to exempt the note of Mr. Dickson. The direction is inserted between the appointment of executors and the beginning of sundry money bequests; Mr. Dickson was not one of these original legatees. In 1908, by her first codicil, she gave him a legacy of five thousand dollars; as an executor he is receiving a large part of adequate compensation for his services up to this time. The part of testatrix's will containing the clause, 'any indebtedness to me is hereby cancelled,' was written in August, 1906; at that time this debt was not in existence. When she made the loan on Mr. Dickson's note of $32,000 in 1910, taking a mortgage and other collateral as security therefor, she cannot have had in mind, or intended, that the debt she then created, was forgiven by her language four years before; if so, she would not have taken the obligation for the loan. When she made her

codicil in 1911, there is no reason to assume that she then repeated a forgiveness of a debt, based upon language in 1906, when there was no debt. The cancellation of a debt by a testator applies where a beneficiary is the debtor; a testator who has made loans or advances to those who are the natural objects of his bounty may forgive them their obligation and continue them as recipients when it clearly appears that such was the intention. It does not so clearly appear as applicable to this obligation; surely a stranger could not set up this general indefinite provision and defend against his debt. No distinction can be made between this debt and the large list of mortgagors and obligors indebted to the decedent when she died; so stated in the inventory filed, and who have paid and are continuing to pay as the account filed shows, principal and interest on their obligations. If the debt due from Mr. Dickson is cancelled by the expression used, then why not all the other debts owing to the testatrix?"

In addition to other indebtedness, the testatrix had a large number of coupon bonds issued by corporations. Did she include these in the cancellation provision of her will? In terms, she did: "any indebtedness to me is hereby cancelled." The language of this provision would include all debts due the testatrix, regardless of the form of the instrument which secured their payment. If default is made by the debtor, payment of the bonds and coupons must be enforced, unless otherwise specifically provided, in the same forum and by the same kind of an action as her other obligations for the payment of money. All parties concede that it was not Mrs. Edwards' intention to cancel all the securities, evidencing an indebtedness, held by her. The opposite theory would be irrational and manifestly absurd. The language of the provision is, however, sufficiently comprehensive to justify this construction, and, if the appellants' contention is to prevail, the clause must be so interpreted; the consequence of which would be to wipe

out the greater part of the decedent's large estate, and defeat the provisions of the will by which her daughters and other relatives are given large bequests. While it must be conceded that the clause in question is not to include what it says, "any indebtedness" due the testatrix, the only ground on which any part of it can be excluded is that by a rational construction of the several provisions of the will it was not her intention to include all her indebtedness. It is a cardinal rule of testamentary construction that the intention of the testator must prevail, and it applies alike in the interpretation of the will and the codicil. If the Dickson note had existed at the date of the will, there would be no greater reason for holding that it was cancelled than the indebtedness secured by smaller and larger obligations which have been collected and hence must be conceded by both the debtors and the executors not to be within the operation of the cancellation clause of the will. The language of the provision, cancelling the indebtedness, is, therefore, not to be taken in its literal sense, as manifestly it was not the intention of the testatrix to cancel or forgive generally the indebtedness due her. She declares that she leaves no large debts, and then cancels "any indebtedness" to her. If it be suggested that she may have referred to debts due from her daughters, the amounts must have been small, otherwise it would defeat her intention, frequently declared in the will, to distribute her estate equally among her four daughters. It is fairly inferable that she intended to forgive small sums which, when loaned, were not really expected to be paid, whether the debtor was a relative or not. We find nothing in the administration of the estate which indicates that the executors, including Mr. Dickson, put any other construction on this provision of the will. As disclosed by the account, the executors are collecting the principal and interest on all the inventoried indebtedness, some of which is much less than the Dickson note. There is nothing in the will to show that the testatrix intended, by

the provision in question, that a distinction should be made between a debt due from a relative and a debt due from a friend or stranger.

The intention of the testatrix must prevail, and the learned auditing judge has pointed out reasons why, in the second codicil, "she cannot have had in mind, or intended that the debt she then (in 1910) created was forgiven by her language four years before." She speaks in the present tense, and declares that "any indebtedness to me is hereby cancelled." There is nothing in either codicil, construed in the light of all the circumstances, which justifies the conclusion that the provision should speak as of a later date so as to cancel the Dickson indebtedness contracted subsequently to the date of the will. The testatrix in the first codicil, as quoted above, discloses the opposite intention by cancelling in terms bequests made to servants who had since left her service. The second codicil does not refer to, or make provision for, the cancellation of any indebtedness due the testatrix. In the first codicil, she gave to Mr. Dickson $5,000 in appreciation of his "great comfort" to her. Two years later, when she made the loan to him, she manifestly felt she had sufficiently rewarded him for his kindness to her, and required him not only to give his note but also to secure it by ample collateral. This was the creation of a debt, with security for its repayment, four years after the testatrix had declared that "any indebtedness to me is hereby cancelled." Seven months after the loan was made and the securities were taken, the second codicil was executed. It does not, in terms, cancel or refer to the debt or note, nor does it otherwise indicate an intention to convert the loan into a gift, unless such is the legal effect of a republication of the will as of the date of the codicil. But this is a question of intention, and, as already stated, the several provisions of the will and codicils and the circumstances do not show that the testatrix intended to cancel the debt. She still retained the note and collateral which, under

the circumstances of the case, tends to negative the intention to cancel the indebtedness and convert the loan, so recently made, into a gift. The fact that the cancellation of the debt of Mr. Dickson, the son-in-law of the testatrix, would, in effect, produce inequality among the four daughters and thereby defeat the general scheme of the will, is an additional circumstance tending to show that it was not the intention of the testatrix to cancel the note and collateral and forgive the indebtedness.

The appellants contend that the second codicil operates as a republication of the will and makes it speak as of the time of the execution of the codicil, and that, therefore, the Dickson indebtedness was cancelled by the provisions of the will. It is urged that this is the effect of the codicil, not only in contemplation of law but expressly by the first clause of the codicil. It is claimed that she had manifested her appreciation of Mr. Dickson and his services to her by the bequest of her husband's cavalry pistol and a legacy of $5,000.00, and, as a further mark of esteem, she intended to cancel the Dickson note and collateral, and that, therefore, the cancellation provision of the will should speak as of the date of the codicil. It is undoubtedly the general rule that a duly executed codicil operates as a republication of the will, so far as not altered or revoked by the codicil, and makes it speak as of the date of the codicil. But, as said in 40 Cyc. 1220, this rule is not absolute; it does not apply in every case and for all purposes; nor does it, of necessity, alter the construction of the will, its original date still being a factor for purposes of construction and interpretation. Moreover, the rule is subject to the limitation that the intention of the testator must not be defeated thereby. In 1 Jarman on Wills (6th Eng. Ed. 1910) 203, it is said: "Although it is true that a codicil confirming a will makes the will for many purposes to bear the date of the codicil, yet this rule is subject to the limitation that the intention of the testator be not defeated thereby. If,

therefore, the testator, in making his will, obviously means its provisions to apply to a state of circumstances existing at its date, republication will not make its provisions apply to the state of circumstances existing at the date of the codicil."

This doctrine is recognized and applied in our own decisions. In Alsop's App., 9 Pa. 374, 381, Mr. Justice BELL, after stating the rule that a codicil operates as a republication of the will so as to make it speak as of the date of the codicil, says: "But like every other general and artificial rule applied in the construction of wills, it gives way before an ascertained adverse intent. Where such actual intent appears, the will and codicil will be treated as distinct instruments, in order to give it effect, though in legal contemplation they are regarded as one testament." The learned justice then discusses the English cases, and proceeds (p. 383) : "These adjudications, and others of a like character, show that questions like ours are questions of intention, as indicated by the language used. We are thus narrowed down to the inquiry, whether from the face of the will alone, or taken in connection with the several codicils, an intent can be gathered to confine the distribution of the residue among the legatees named in the will proper."

The appellants rely on Coale, Exec. of Brinton, v. Smith, 4 Pa. 376, to sustain their position that a codicil is a republication of the will so as to make it speak from the time of the execution of the codicil. There is no question, as already suggested, that this is the general rule, but appellants fail to observe its limitations, which, as pointed out above, are as well established by the decisions as the rule itself. It is true that some parts of the opinion in that case may apparently justify the contention of the appellants that there is no limitation or exception to the rule that the will speaks as of the date of the codicil, regardless of the intention disclosed by the will, the codicil, and the circumstances of the particular case. It is clear, however, that the learned justice

who wrote the opinion in the Coale case did not intend to assert any such doctrine. We must assume that, when he wrote the opinion in that case, he was familiar with the exception to the general rule, as declared in both the English and American authorities, that a codicil is controlled or limited by the intention of the testator. He discloses such knowledge, and recognizes the limitation of the general doctrine, as appears from the above excerpt from his opinion in the subsequent case of Alsop's App., 9 Pa. 374, decided two years after the Coale case.

From these and other authorities which might be cited, it is clearly deducible that while the general rule is that the execution of a codicil republishes the will as of the date of the codicil, it is subject to the limitation that the intention of the testator shall not thereby be defeated. As already pointed out, the provision of the will in question speaks in the present tense, and was doubtless intended to operate on debts existing at the date of the will which no doubt embraced only small sums or debts of minor importance, regardless of the fact whether they were due from relatives or friends. We are satisfied that it was not the intention of the testator, in the execution of the second codicil, to republish the provision of the will in question, and thereby cancel or annul the large indebtedness so recently contracted by Mr. Dickson, whose obligation the decedent held at the date of the codicil and also at the time of her death.

The decree is affirmed.